## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 13-56-5-SLR |
| | ) |
| WALTER THOMAS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

At Wilmington this $\partial^{\text{\\st}}$ day of May, 2014, having considered the submissions, both written and oral, offered by the parties in connection with plaintiff's motion for disqualification of counsel, the court concludes that disqualification is warranted based on the following analysis:

1. **Background.**[1] On March 5, 2013, a federal grand jury returned a four-count indictment charging defendant Christopher Sanchez ("Sanchez") with: (1) conspiracy to commit robbery, in violation of 18 U.S.C. § 1951; (2) conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846; (3) possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).[2] John S. Malik, Esquire ("Malik"), was appointed to represent Sanchez.

---

[1]This background does not constitute findings of fact; it was developed from the parties' submissions and presentations at the evidentiary hearing conducted on May 5, 2014. (D.I. 230)

[2]*United States v. Sanchez*, Crim. No. 13-23-GMS ("the *Sanchez* case").

2. Sanchez is alleged to have planned and prepared for an armed robbery of what he believed was a drug stash house. (D.I. 219) The stash house was, however, part of a reverse-sting operation set up by the Bureau of Alcohol, Tobacco, Firearms and Explosives. Sanchez recruited Donte Banks and Charles Banks ("the Banks brothers") to assist in this planned home invasion robbery of the stash house. The Banks brothers were introduced to Sanchez by a third party, described as an African American male, approximately forty-five years of age, who drove a white BMW model 750; this individual served twenty-five years in prison for murder and was nicknamed "Quadree."[3]

3. On March 11, 2013, Charles Banks waived indictment and entered a plea of guilty to an information charging him with conspiracy to commit a robbery affecting interstate commerce and use of a firearm in furtherance of a crime of violence. *United States v. Banks*, Crim. No. 13-16-GMS. On March 27, 2013, Donte Banks also pleaded guilty to the same charges. *United States v. Banks*, Crim. No. 13-17-GMS. During their plea colloquies, both of the Banks brothers admitted their roles in the armed robbery conspiracy and entered into cooperation agreements with the government. The Banks brothers are expected to testify at trial against Sanchez. (D.I. 230 at 10)

4. On June 13, 2013, a federal grand jury returned an indictment charging defendant Walter Thomas with: (1) conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846; and (2) distribution of heroin, in

---

[3]In its motion for disqualification of counsel, plaintiff references this third party as "Quadree." (D.I. 219) At the evidentiary hearing, the parties identified this third party as "Qiydaar." (D.I. 230) For purposes of the analysis at bar, the court will refer to this third party as "Quadree." (*See* D.I. 219 at 3; D.I. 230 at 6)

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[4] Malik was also appointed to represent Thomas.

5. The *Sanchez* case was scheduled to proceed to trial on February 3, 2014. Sanchez' pretrial filings suggest that he will present an entrapment defense at trial. (D.I. 230 at 10) In the course of trial preparation, Malik discovered that the description of Quadree was similar to some of the information he knew about his client, Walter Thomas.[5] During a January 27, 2014, meeting with counsel for plaintiff, Malik advised that he had a potential conflict of interest because the description of Quadree was similar to information he knew about Thomas. Prior to this meeting, counsel for plaintiff was unaware that Quadree might be Thomas.

6. Shortly thereafter, Malik met (separately) with Sanchez and with Thomas to disclose the information about the conflict and "what some of the various scenarios could be." (D.I. 230 at 6-7) Each defendant was willing to waive any conflict of interest so that Malik could continue his representation.

7. On January 30, 2014, after advising the court of the potential conflict of interest, the *Sanchez* trial was postponed. Malik sought guidance from Charles Slanina, Esquire,[6] an expert on matters of professional responsibility in Delaware, on

___

[4]*United States v. Thomas*, Crim. No. 13-56-5-SLR ("the *Thomas* case") There were eleven defendants charged in the indictment. (D.I. 14) The caption and counts one and fourteen identify defendant Thomas as "a/k/a Quadre." (D.I. 14 at 1 and 6)

[5]Malik has only identified the similarities between Quadree and defendant Thomas. Malik does not know whether defendant Thomas and Quadree are, in fact, the same person.

[6]Apparently, Slanina concluded that there was a conflict of interest present. (D.I. 230 at 24) He suggested several resolutions, including: (1) Malik withdrawing

3

whether Malik had an obligation to withdraw from the case(s).

8. In a February 11, 2014 letter to the court in the *Thomas* case, Malik advised of the potential conflict of interest and requested a teleconference to further discuss the situation. (D.I. 145, 159, 174) On April 25, 2014, plaintiff filed (under seal) a motion to disqualify in both cases. (D.I. 219)

9. On May 5, 2014, a joint evidentiary hearing was convened in both the *Sanchez* and *Thomas* cases, with both defendants in attendance. (D.I. 230) Since the parties agreed that the basic facts were undisputed, a full evidentiary hearing was not conducted. Instead, they proceeded by proffer and did not call either defendant to testify. (*Id.* at 28)

10. Plaintiff contends that disqualification is warranted because Malik's representation of defendants Sanchez and Thomas is materially limited.[7] Specifically, in the *Sanchez* case, Malik could potentially represent both defendant Sanchez and a potential unindicted co-conspirator (Quadree), resulting in a conflict of interest from divided loyalties, making Malik unable to advise Sanchez on trial strategy without divulging information about Thomas. With regard to defendant Thomas, plaintiff is unable to present a cooperation plea agreement because Malik cannot counsel

---

from the cases; (2) ordering Malik removed from the cases, without finding any ethical violation for doing so; or (3) appointing each defendant a separate attorney to work with Malik. (*Id.* at 24-26) Plaintiff opposed the third option, arguing that it does not resolve the conflict. (*Id.* at 34-35)

[7]Plaintiff presented various scenarios of conflicts, all based on the premise that defendant Thomas is Quadree. (D.I. 230 at 8-24) Moreover, plaintiff emphasized that "Quadree" is very important to its case and would be called as a witness for the government.

4

Thomas on the merits of such an agreement, as doing so would be in direct conflict with his duty of loyalty to Sanchez.

11. **Discussion.** The Sixth Amendment of the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. *Wheat v. United States*, 486 U.S. 153, 158 (1988); *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996). The purpose of providing assistance of counsel is to ensure that criminal defendants receive a fair trial. *Lockhart v. Fretwell,* 506 U.S. 364, 368 (1993).

12. Derivative of the right to effective assistance of counsel is a defendant's right to representation by counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). The primary purpose of these rights is to afford a criminal defendant control over the conduct of his defense since it the defendant who "suffers the consequences if the defense fails." *United States v. Moscony,* 927 F.2d 742, 748 (3d Cir.1991). A defendant's right to counsel of his choice, however, can be circumscribed where the attorney has an actual conflict or a serious potential for conflict in representing the defendant. *Wheat*, 486 U.S. at 159.

13. In considering a motion to disqualify counsel, there is a presumption in favor of defendant's choice of counsel. *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999). In moving for disqualification, the government bears the burden of overcoming the presumption by demonstrating that the attorney in question has an actual or serious potential for conflict. *Wheat*, 486 U.S. at 164. When determining whether the government has met this burden, the court must balance "a defendant's Sixth

5

Amendment right to counsel of choice against the interests of the proper and fair administration of justice." *United States v. Voigt*, 89 F.3d at 1074. The Third Circuit has recognized that this is a difficult task as "'[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.'" *Id.* at 1076.

14. The Third Circuit has also explained that a court need not find an actual, existing conflict of interest in determining whether to disqualify counsel on conflict of interest grounds. The court

> must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Voigt*, 89 F.3d at 1076 (citing *Wheat*, 486 U.S. at 164).

15. Moreover, "[t]he tension between protecting the institutional legitimacy of judicial proceedings, which includes a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties, and allowing a defendant to be represented by the attorney of his choice, creates the disqualification issue." *United States v. Stewart*, 185 F.3d 112, 122 (3d Cir. 1999). It is within the court's discretion to disqualify counsel even where the represented parties have waived the conflict. *Wheat*, 486 U.S. at 164.

16. Applying these principles to the record at bar, the court concludes that disqualification is appropriate due to the serious potential conflicts which emanate from

6

Malik's representation of both defendant Sanchez and defendant Thomas.[8] Significantly, plaintiff has carried its burden of demonstrating that the interests of Sanchez and Thomas are directly adverse. To that end, Malik's ability to advise Sanchez on trial strategies, including whether to testify on his own behalf, will be tainted by Malik's knowledge and representation of Thomas. Additionally, if Thomas were called by the government to testify at the *Sanchez* trial, Malik would be faced with cross-examining his own client. Similarly, with regard to Thomas, Malik is unable to enter into cooperation-plea negotiations as this would directly conflict with the interests of Sanchez.

17. **Conclusion.** The court finds that the serious potential for conflict of interest overcomes the presumption in favor of defendant's choice of counsel.[9]

United States District Judge

---

[8]To that end, the court accepts that the similarities between Quadree and defendant Thomas suggest they are the same person.

[9]In so doing, the court is neither finding nor even suggesting that Malik's conduct was in any way improper or unethical.

7